# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| DWAYNE ANDERSON and KRISTEN HASSAN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>vs.<br><br>SOUTHWEST CREDIT SYSTEMS, L.P.,<br><br>        Defendant. | Case No.: 16-cv-1636<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Dwayne Anderson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Kristen Hassan is an individual who resides in the Eastern District of Wisconsin (Kenosha County).

5. Plaintiffs are each a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiffs, debts allegedly incurred for personal, family or household purposes.

6. Defendant Southwest Credit Systems, L.P. ("SCS") is a debt collection agency with its principal place of business located at 4120 International Parkway Ste 1100, Carrollton, TX 75007.

7. SCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. SCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. SCS is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Anderson Letter*

9. Plaintiff Anderson entered into a consumer transaction with Time Warner Cable ("TWC") for cable television/internet/phone services.

10. On or about February 26, 2016, SCS mailed a debt collection letter to Plaintiff Anderson regarding an alleged cable/internet/phone services debt, allegedly owed to TWC and used only for personal, family or household purposes. A copy of the letter is attached to this complaint as Exhibit A.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Exhibit A states the following: "Equipment Cost: $0.00."

13. There is no explanation in the letter as to what the "Equipment Cost" is or would be.

14. Although the amount of "Equipment Cost" in Exhibit A is $0.00, the letter implies that there could be some unknown charges added to the debt in future letters. *See, eg. Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D.

2

Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

15. The unsophisticated consumer interprets references to "cost" in collection letters, even when the amount is $0.00, as representations that the debt collector has a right to add charges to the alleged debt, and that charges will be sought in future letters.

16. Plaintiff was confused by the nebulous reference on SCS's letter to "Equipment Cost" because he had never received equipment from TWC and has no idea what those charges are, potentially could be, or whether they are legitimate.

17. The unsophisticated consumer would be confused by the nebulous reference on SCS's letter to "Equipment Cost" and would have no idea what those charges are, potentially could be, or whether they are legitimate.

### *Hassan Letter*

18. On or about April 14, 2016, SCS mailed a debt collection letter to Plaintiff Hassan regarding an alleged debt, allegedly owed to SCS and originally owed to "AT&T." A copy of this letter is attached to this complaint as Exhibit B.

19. The alleged debt identified in Exhibit B is an alleged internet services account, owed to AT&T, and used only for personal, family or household purposes.

20. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

21. Upon information and belief, Exhibit B is a form debt collection letter used by SCS to attempt to collect alleged debts.

22. Exhibit B states the following:

3

| Principal |
| --- |
| $181.68 |
| Interest |
| $0.00 |
| Total Amount Due |
| $181.68 |

23. Although the amount of "Interest" in Exhibit B is $0.00, the unsophisticated consumer interprets such references in collection letters letter as implying that there could be some unknown interest charges added to the debt in future letters. *See, eg. Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

24. Plaintiff has never agreed to pay any amount of interest, or any rate of interest, on any alleged debt owed to the creditor listed on Exhibit B. The alleged debt was for internet service.

25. Upon information and belief, the reference to "Interest" is a threat to add prejudgment interest to Plaintiff's and Class Members' alleged debts, despite the fact that no legal action has been initiated against the consumer.

26. A debt collector cannot collect prejudgment interest when that interest has not been awarded by a court or agreed to by contract. *Paige v. Waukesha Health Sys.*, No. 12-cv-601-CNC; 2013 U.S. Dist. LEXIS 96962, *18-20 ("Wisconsin cases suggest, as the Paiges argue, that absent a contractual agreement prejudgment interest cannot be automatically added by a creditor but instead must await a court judgment;"), *citing Estreen v. Bluhm*, 79 Wis. 2d 142, 156, 255 N.W.2d 473, 482 (1977); *Erickson by Wightman*, 183 Wis. 2d at 123, n.8, 515 N.W.2d at 301,

4

n.8; *Beacon Bowl, Inc. v. Wis. Elec. Power Co.*, 176 Wis. 2d 740, 776-77, 501 N.W.2d 788, 802-03 (1993); *contra Trease v. Tri-State Adjustments, Inc.*, 934 F. Supp. 2d 1016 (E.D. Wis. 2013).

27. Wisconsin Courts have made clear that there is no entitlement to prejudgment interest without a judgment awarding it. *Erickson by Wightman*, 515 N.W. at 300-01 n.8 (*citing Estreen*, 255 N.W.2d at 481).

28. A plaintiff in a civil collection action (i.e. the creditor) has the burden to *prove* that it is entitled to prejudgment interest, as is true for any other relief that any plaintiff requests in a civil action. *Marquez v. Mercedes-Benz United States, LLC*, 341 Wis. 2d 119, 139, 815 N.W.2d 314, 324 (2012).

29. Indeed, Wisconsin Courts have declined to award prejudgment interest when a plaintiff failed to prove that it was entitled to the amount of damages that it sought in the lawsuit. *See Congress Bar & Restaurant, Inc. v. Transamerica Ins. Co.*, 42 Wis. 2d 56, 71, 165 N.W.2d 409, 417 (1969); *Dahl v. Housing Authority of Madison*, 54 Wis. 2d 22, 32, 194 N.W.2d 618, 623 (1972).

30. Until a creditor has *proven in court* that it is entitled to prejudgment interest in court by obtaining a judgment awarding prejudgment interest, such interest is a future, contingent amount that is not owed by the consumer and is not part of the "amount of the debt."

31. The Seventh Circuit has held that similar conduct, namely the collection of future, contingent amounts that depend upon the entry of judgment specifically allowing those amounts, but before the judgment is actually entered, violates the FDCPA because the contingent amounts are not part of the debt. *Veach v. Sheeks*, 316 F.3d 690, 692 (7th Cir. 2003).

32. SCS's tactic of threatening to add unawarded prejudgment interest to the alleged debt is a material violation of the FDCPA. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

33. Plaintiffs were confused by Exhibits A and B, respectively.

34. Plaintiffs had to spend time and money investigating Exhibits A and B, and the consequences of any potential responses to Exhibits A and B.

35. Plaintiffs had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiffs on the consequences of Exhibits A and B.

36. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this

6

reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

37. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

38. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

39. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

40. 15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

41. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

42. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

43. 15 U.S.C. § 1692f (1) specifically prohibits the " collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

44. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I -- FDCPA

45. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

46. Count I is brought on behalf of Plaintiff Anderson.

47. SCS's threat to collect an "equipment cost" which was not further specified or explained in Exhibit A is a false, deceptive, and/or misleading representation to the unsophisticated consumer recipient.

48. Exhibit A falsely represents that Defendant is lawfully entitled to collect an "equipment cost" even though Plaintiff never received any equipment from TWC.

49. Exhibit A creates a false impression as to its authorization or approval for collecting an equipment cost.

50. An unsophisticated consumer would have no idea what an "equipment cost" is or could be or whether it is legitimate.

51. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10).

## COUNT II – FDCPA

52. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. Count II is brought on behalf of Plaintiff Hassan.

54. The reference in SCS's letter to "Interest" is false, misleading and confusing.

55. SCS is not entitled to collect any prejudgment interest, as the alleged obligation has not been reduced to judgment and Plaintiff did not enter into any agreement with the creditor to pay interest or to a rate of interest.

56. SCS violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f and 1692f(1).

## CLASS ALLEGATIONS

57. Plaintiffs bring this action on behalf of two Classes.

58. Class One consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form of Exhibit A, (c) that sought to collect an alleged debt, (d) incurred for personal, family or household purposes, (e) on or after December 9, 2015, up to and including December 9, 2016, (f) that was not returned by the postal service. Class One shall be known as the "Equipment Fee" class, and Anderson will represent the class.

59. Class Two consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) on or after December 9, 2015, up to and including December 9, 2016, (e) that was not returned by the postal service. Class Two shall be known as the "Interest" class, and Hassan will represent the class.

60. The Classes are each so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

61. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A and B violate the FDCPA.

9

62. Plaintiffs' claims are typical of the claims of each Class members. All are based on the same factual and legal theories.

63. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

64. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

65. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: December 9, 2016

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com

meldridge@ademilaw.com
dmorris@ademilaw.com